# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GONZALEZ, | Case No. 1:19-cv-00492-EPG |
| Plaintiff, | **FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

At a hearing on July 14, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\
\\\

**I.      Medical Opinions**

Plaintiff claims that the ALJ committed harmful error by affording considerable weight and great weight to the non-treating opinions of the examining, consultative physical and psychological examiners over the opinions of both treating psychological specialists, Drs. Houghton and Rowell, without providing the requisite "specific and legitimate" reasons supported by substantial evidence for doing so.

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830–31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Here, the medical opinions of the treating physicians, Drs. Houghton and Rowell, were contradicted by the opinions of consulting examining physicians.  The Court looks to whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence for rejecting their opinions.

**A. Dr. Rowell**

The ALJ discussed the opinion of Dr. Rowell as follows:

> The undersigned gives considerable but ultimately discounted weight to the opinion of George Rowell, M.D., the claimant's primary treatment provider, who opined that claimant has a "class 4 level of impairment" per the ACOEM's Occupational Medicine practice Guidelines, indicating impairment levels

significantly impeding useful functioning of ADLs, social functioning, concentration, and adaptation. Exh. 5F/141. He also opined that the claimant was then currently disabled totally and temporarily. Ex 5F/143. In addition, he also opined that the claimant could not return to work as a maintenance worker, but that an early pursuit to alternative work of vocational rehabilitation would improve his prognosis. Ex. 5F/146. The opinion of disability is one reserved to the Commissioner. Second, the term "totally and temporarily disabled" is a term of art used in Workers' Compensation and does not equal the definition of disability used in Social Security. Third, Dr. Rowell's opinion that the claimant has a level of impairment that significantly impeded useful functioning is not consistent with his findings. His treatment notes indicate very little in the way of objective evidence indicating anything outside of depressed mood, occasional anger, and occasional tearfulness, and focus mostly on the claimant's subjective complaints. Ex. 5F. In addition, examinations by Dr. Rowell as well as others show that the claimant is cognitively intact, cooperative with treatment providers, and able to complete tasks. E.g., Exh. 1F/15; 4F/8; 5F/131-134; 7F; 11F/6. In fact, his own opinion that the claimant would likely improve with an early pursuit to alternative work supports this fact.

(A.R. 26).

The ALJ's first reason, that the opinion of disability and the finding of "totally and temporarily disabled" do not constitute specific work-limitations, is accurate. Such conclusions are not accorded weight on their own, although they can be relevant to finding such limitations.

The ALJ's next reason, that the opinion is not consistent with the doctor's findings, has some support in the record. Much of Dr. Rowell's opinions appear based on Plaintiff's description of himself, rather than Dr. Rowell's personal observations during the examination. For example, Dr. Rowell writes "Regarding basic cognitive function, *subjectively*, he admitted dyscognition, that is, impairment in memory; however, *objectively* he presented with a detailed cognitive focus on events related to work-related injury." (A.R. 507-508). Similarly, Dr. Rowell writes "Regarding behavioral disturbance, *during the face-to-face evaluation*, Mr. Gonzalez is not aggressive; moreover, the following are not present: violence, poor impulse control, manipulative behavior, hostility, antisocial behavior, and demanding behavior." (A.R. 509).

The ALJ's next reason, that examination by Dr. Rowell as well as others show that the claimant is cognitively intact, cooperative with treatment providers, and able to complete tasks, is supported by the record. Although these observations do not necessarily contradict Dr. Rowell's conclusions, it is true that they do not provide support for his opinions regarding the level of

impairment.

Finally, it is true that Dr. Rowell opines that Plaintiff may improve with an early pursuit of alternative work. Regarding the question, "Should Mr. Gonzalez resume employment via modified or alternative work?" Mr. Rowell wrote: "This question can best be answered once the psychiatric treatment is embraced. However, it is my professional opinion that he cannot return to being a maintenance worker at this moment in time; however, it is my professional opinion that an early pursuit to alternative work or vocational rehabilitation would improve his prognosis, for the following reasons . . . ." Mr. Rowell goes on to cite statistics for how often people can return to work. (A.R. 521). While this support is not specific to Mr. Gonzalez, the fact remains that Mr. Rowell believed it was possible that Mr. Gonzalez could pursue alternative work in the future notwithstanding his other medical opinions.

Thus, the Court concludes that the reasons given for discounting Dr. Rowell's opinion are sufficiently specific and legitimate and supported by substantial evidence.

### B. Dr. Houghton

The ALJ discussed the opinion of Dr. Houghton as follows:

> The undersigned gives little weight to the opinion of Gareth Houghton, Ph. D., who performed a psychological evaluation of claimant. Dr. Houghton noted that the claimant's Beck Depression Inventory score was suggestive of a very severe level of depression; the claimant's Beck Anxiety Inventory score indicated a moderate to severe level of anxiety; the claimant's Minnesota Multiphasic Personality Inventory-2 score indicated that the claimant was crying for help and that the claimant was very stressed. He noted that such patients were usually fatigued, anxious and filled with self-doubts, among other things. Ex. 11F/5-6. He also stated that the claimant had profoundly embedded PTSD which derailed him from engaging his life in anything that was close to an appropriate manner. Ex. 11F/7. He also opined that the claimant experienced "class V or extreme permanent impairment in ADLs, social functioning, memory, concentration, persistence, and pace and deterioration or decompensation in complex or work/life settings." Ex. 13F. In addition, he opined that the claimant had a "whole person impairment of 63" and was incapable of competing and participating in the open labor market. Ex. 13F/6.
>
> Dr. Houghton's opinion regarding the claimant's results from the above tests is based on the claimant's subjective reports. In addition, his opinion that the claimant could not engage in "anything that was close to an appropriate manner" is vague and based on Dr. Houghton's opinion of what he believes to be appropriate

which he does not define. Furthermore, his opinion that the claimant had "class V. or extreme permanent impairment" is not consistent with the claimant's ability to function cognitively, be cooperative, and finish tasks on examination. E.g., 1F/15; 4F/8; 5F/131-134; 7F; 11F/6. Finally, his opinion that the claimant had a "whole person impairment" and that the claimant was incapable of competing and participating in the open labor market is not supported by any objective findings in his or other reports. In fact, the claimant had not even contemplated other work and the claimant had only some mild to moderate symptoms and signs.

However, the undersigned gives considerable weight to Dr. Houghton's opinion that the claimant should pursue talk therapy. Ex. 11F/7. This is consistent with the claimant's nightmares secondary to PTSD which would be helped by this type of therapy.

(A.R. 28).

The ALJ's first reason, that Dr. Houghton's opinion is largely based on Plaintiff's subjective reports, is true. Given the nature of the impairment, this is somewhat to be expected. Nevertheless, given the contradictory medical reports, this is a legitimate reason to weigh those medical opinions.

The ALJ's second reason, that an opinion regarding an inability to engage in "anything that was close to an appropriate manner," is indeed vague and does not express a specific work limitation. While this may not be a reason to discount the opinion in total, it too is a legitimate factor to consider in weighing contradictory medical opinions.

The ALJ's reference to the claimant's cognitive abilities, cooperativeness, and ability to complete tasks is legitimate given the Mr. Houghton's opinion of extreme permanent impairment.

Finally, the ALJ's reason based on objective findings and mild and moderate symptoms is not specific because it does not cite to any specific parts of the opinion. However, to the extent this reiterates the general observation that Mr. Houghton's opinion was based far more on what Mr. Gonzalez said than with Mr. Houghton observed, it is a legitimate factor in weighing contradictory medical opinions.

Thus, the Court concludes that the reasons given for discounting Dr. Houghton's opinion are sufficiently specific and legitimate and supported by substantial evidence.

**II.    Subjective Symptom Testimony**

Plaintiff next claims that the ALJ erred in not fully crediting Plaintiff's testimony

regarding her symptoms.

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ found objective medical evidence of an underlying impairment. The Court looks, therefore, to whether the ALJ rejected the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so.

The ALJ stated as follows regarding Plaintiff's symptom testimony:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

> consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Although the claimant alleged that he was not able to work due to his mental impairments, the claimant's symptoms, such as his fear of driving or riding a motorized vehicle, while possibly preclusive of returning to his past work, would not necessarily preclude other work taking into consideration his limitations. In fact, the claimant himself testified that he had not contemplated his ability to perform other work. Moreover, one of his treatment providers noted that while he did not believe that the claimant could return to work in his previous job at that time, "an early pursuit to alternative work . . . would improve his prognosis." Ex. 5F/146.
>
> In addition, while the claimant experiences symptoms such as anxiety, depressed mood, the tendency to ruminate, lack of sleep, anxiety around others, and reported hallucinations some of the time, his cognitive abilities are intact, he is able to regularly take care of his sons. He is also able to go to Walmart and pick up his prescriptions as well as, at least, occasionally go grocery shopping. Ex. 1F/15; 4F;8; 5F/131-134; 7F; 11F/6; Hearing Testimony. He has also been able to attend numerous sessions and examinations on a consistent basis since late 2013. Ex. 5F; 10F; 12F. Finally as discussed above, the claimant's findings on his examinations were only mild to moderate.
>
> In short, the evidence does not support the degree of limitation alleged. As long as the claimant's limitations are kept in mind, such as keeping interactions between the claimant and others at a superficial level per the claimant's testimony that he became upset when questioned about the incident, the undersigned cannot find that the claimant is precluded from all work.

(A.R. 25).

The record supports the ALJ's reasons based on Plaintiff testifying he had not yet considered alternate work (A.R. 45 ("Q: Have you attempted any other type of work in a different setting? A: No. Q: Is there a reason for that? A: I'm still, the doctor hasn't released me.")), as well as Plaintiff's physician considering alternative work for him in the future, as discussed above.

The ALJ's description of Plaintiff's activities of daily living is also accurate. While those activities alone do not demonstrate that Plaintiff can pursue full-time work, they do demonstrate some ability to perform activities notwithstanding Plaintiff's impairments.

These reasons might not be sufficient to discredit assertions of very specific symptoms or physical limitations. However, Plaintiff did not testify about specific limitations in a work

setting. Rather, he testified to symptoms such as nightmares and trouble sleeping that do not necessarily preclude work. In this context, the ALJ's reasons for discounting Plaintiff's assertion that he cannot perform full time work are legally sufficient.

### III. RFC Incorporation of Limitations

Finally, Plaintiff argues that the ALJ's RFC and associated hypotheticals did not include a limitation that Plaintiff not discuss his previous accident with coworkers.

However, the ALJ's RFC on this point is consistent with her finding. In her opinion, she found that "[a]s long as the claimant's limitations are kept in mind, such as keeping interactions between the claimant and others at a superficial level per the claimant's testimony that he became upset when questioned about the incident, the undersigned cannot find that the claimant is precluded from all work." (A.R. 25). The RFC includes the corresponding limitation that "[t]he claimant can relate and interact with coworkers and supervisors on a superficial basis, which is defined in terms of the nature of the interaction rather than the quantity or frequency." (A.R. 23).

### IV. Conclusion

For the foregoing reasons, the decision of the Commissioner of Social Security is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **July 16, 2020**                      /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE